**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**FILED**
at Santa Fe, NM

SEP 1 8 2006

MATTHEW J. DYKMAN
CLERK

LIBERTARIAN PARTY OF
NEW MEXICO, *et al.*,

      Plaintiffs,

vs.

CIV-06-0615 MV/ACT

REBECCA VIGIL-GIRON, in her
official capacity as Secretary of State
of the State of New Mexico, and
MARY HERRERA, in her official
capacity as County Clerk of Bernalillo
County, New Mexico,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Secretary of State's Motion for

Summary Judgment, filed August 17, 2006, **[Doc. No. 15]**. The Court, having considered the

motion, response, relevant law, and being otherwise fully informed, finds that the motion will be

**GRANTED.**[1]

---

[1] While Defendant Mary Herrera, County Clerk of Bernalillo County, has not formally joined in this motion, her interests are identical to the Secretary of State's interests such that she is entitled to summary judgment on the same grounds as the Secretary of State. *See* Defendant Herrera's Response to Plaintiffs' Motion for Preliminary Injunction, filed July 27, 2006, [Doc. No. 9] (acknowledging that her "interests are uniquely aligned with the Secretary of State; indeed, the Court's determination as to the merits of Plaintiffs' Motion for Preliminary Injunction--and to the ultimate issues, as well--would effectively be binding on Herrera even if she were not a party."). Accordingly, the Court will grant summary judgment *sua sponte* in favor of Defendant Herrera as well. *See Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.,* 131 F.3d 874, 892 (10th Cir. 1997) *(*"A court may grant summary judgment *sua sponte* so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.").



## BACKGROUND

Plaintiffs, the Libertarian Party of New Mexico and four individual Libertarian Party nominees for various offices in the New Mexico 2006 General Election, bring this action challenging New Mexico's system for allowing a new party's candidates to be listed on the ballot. Plaintiffs assert that New Mexico's election code, which requires candidates from newly recognized minor parties to submit a petition with a certain number of signatures in order to be listed on the ballot, violates their rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs seek a declaratory judgment that New Mexico's system for new party candidate ballot access violates their constitutional rights, an injunction prohibiting Defendants from requiring a new party's candidates to petition for ballot access after their nomination for elective office, an order requiring Defendants to place Libertarian Party candidates on the ballot for the 2006 General Election, and an award of nominal damages and costs and fees. Plaintiffs moved for a preliminary injunction and Defendant Rebecca Vigil-Giron, New Mexico Secretary of State, moved for summary judgment. The Court finds that the case is properly resolved on summary judgment, and therefore will not reach the motion for a preliminary injunction.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the

2

moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie*, 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Rule 56(f) Motion

Plaintiffs have filed a Rule 56(f) affidavit requesting the opportunity to gather evidence in opposition to the motion for summary judgment. Specifically, Plaintiffs seek to develop

historical evidence regarding the burdens New Mexico's election laws place on new minor party candidates.[2] Under the circumstances of this case, the Court finds that historical evidence is not necessary to assess the character and magnitude of the burdens created by the challenged election provisions or to assess the legitimacy and strength of the State's justifications for the provisions. *See, e.g., Jenness v. Fortson.* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976 (1971) (deciding similar challenge to Georgia's election provisions without any reliance on historical evidence); *American Party of Texas v. White.* 415 U.S. 767, 782, 94 S.Ct. 1296, 1307 (1974) (same). As the material facts are not in dispute, the Court finds this case ripe for a decision on summary judgment.

## II.    New Mexico's Ballot Access System

To qualify as a political party in New Mexico, a political party must file a petition containing signatures from at least one-half of one percent of the total votes cast for the office of Governor of New Mexico or President of the United States at the preceding general election.[3] § 1-7-2 NMSA (1978). If each of the political party's candidates received less than five percent of the total number of votes cast at the last preceding general election for the office of Governor

---

[2] The Court notes that the Rule 56(f) affidavit submitted by Plaintiffs' counsel refers only generally to the need to conduct additional discovery to develop evidence on the character and magnitude of the burdens that New Mexico's ballot access scheme imposes and the legitimacy and strength of any interests that the State may offer as justification for the scheme. It is only in their brief that Plaintiffs assert the need for historical evidence.

[3] A party ceases to be qualified as a political party for purposes of the New Mexico Election Code if two successive general elections are held without at least one of the party's candidates on the ballot or if the total votes cast for the party's candidates for Governor of New Mexico or President of the United States, provided that the party has a candidate seeking election to either of these offices, in a general election do not equal at least one-half of one percent of the total votes cast for the office of Governor of New Mexico or President of the United States, as applicable. § 1-7-3(C) NMSA (1978).

of New Mexico or President of the United States, the party is designated a "minor party." § 1-1-9(B) NMSA (1978). If any of the political party's candidates received five percent or more of the total number of votes cast at the last preceding general election for the office of New Mexico or President of the United State, and the party's membership totals at least one-third of one percent of the statewide registered voter file on the day of the governor's primary election proclamation, the party is designated a "major party." § 1-1-9(A) NMSA (1978).

Under New Mexico election laws, minor and major parties nominate candidates for office differently.

### A. Minor Party Candidate Nominating Process

A minor party nominates candidates for public office in the manner prescribed in its party rules and regulations. § 1-8-2(B) NMSA (1978). Once candidates are nominated, the appropriate party official must certify the names of the candidates to the designated state election official by the second Tuesday in July in the year of the general election. §§ 1-8-2 & 1-8-3 NMSA (1978). Each certification must be accompanied by a petition containing signatures of voters totaling not less than one percent of the total number of votes cast at the last preceding general election for the office of Governor of New Mexico or President of the United States. *Id.* The signatures may be from registered voters of any party affiliation who are residents of the state, district, county or area represented by the office for which the person is being nominated. *Id.* A voter, however, may sign only one petition for a particular office unless there is more than one vacancy for that office. *Id.* A voter who signs the petition of a minor party candidate is not required to state that he or she intends to vote for that candidate at the election and is free thereafter to participate in a party primary.

**B. Major Party Candidate Nominating Process**

A major party nominates candidates, other than presidential candidates, by primary election. § 1-8-17 NMSA (1978). A major party may designate candidates for nomination to statewide office or the office of United States Representative by state convention. § 1-8-21.1 NMSA (1978). Candidates seeking preprimary convention designation must submit nominating petitions signed by a number of voters equal to at least 2% of the total vote[4] of the candidate's party in the state or congressional district, or the following number of voters, whichever is greater: for statewide offices, 230 voters; and for congressional candidates, 77 voters. § 1-8-33(B) NMSA (1978). Any candidate who receives 20% or more of the votes of the duly elected delegates to the convention will be placed on the primary election ballot. § 1-8-21.1 NMSA (1978). Candidates who seek, but do not obtain, preprimary convention designation by a major political party may file new declarations of candidacy and nominating petitions. § 1-8-21 NMSA (1978). These nominating petitions must contain signatures totaling at least 4% of the total vote of the candidate's party in the state or congressional district, whichever applies to the office he seeks. § 1-8-33 NMSA (1978).

Candidates for any other office shall have their names placed on the primary election ballot by filing declarations of candidacy and nominating petitions with the proper filing officer. § 1-8-21(B) NMSA (1978). Nominating petitions for these candidates shall be signed by a number of voters equal to at least 3% of the total vote of the candidate's party in the district or division, or the following number of voters, whichever is greater: for metropolitan court and

---

[4] "Total vote" is defined as "the sum of all votes cast for all of the party's candidates for governor at the last preceding primary election at which the party's candidate for governor was nominated." § 1-8-33(A) NMSA (1978).

magistrate courts, 10 voters; for the public regulation commission, 50 voters; for the state board of education, 25 voters; for state representative, 10 voters; for state senator, 17 voters; and for district attorney and district judge, 15 voters. § 1-8-33(C) NMSA (1978).

Signatures on nominating petitions must be from members of the candidate's political party. § 1-8-31(A) NMSA (1978). A person who signs a nominating petition shall sign only one petition for the same office unless more than one candidate is to be elected to that office, and in that case a person may sign not more than the number of nominating petitions equal to the number of candidates to be elected to the office. *Id.*

### III. Libertarian Party of New Mexico

In April 2006, the Libertarian Party of New Mexico filed a petition containing signatures from at least one-half of one percent of the total votes cast for the office of Governor of New Mexico or President of the United States at the preceding general election and was recognized as a "minor political party" pursuant to Section 1-1-9. The Libertarian Party then selected candidates, including the four named Plaintiffs, in accordance with its party rules and regulations. The Libertarian Party certified its candidates to the appropriate state official but did not attempt to gather the required candidate petition signatures. Instead, the Libertarian Party filed this action asserting that the candidate petition requirement, considered in conjunction with the party recognition petition requirement, violates their constitutional rights.

### IV.    Analysis

Plaintiffs assert that the two-petition ballot access scheme impermissibly burdens their right to cast their votes effectively and their right to associate for the advancement of political beliefs in violation of the First and Fourteenth Amendments. The First Amendment protects the

7

right of citizens to associate and to form political parties for the advancement of common
political goals and ideas. *See Colorado Republican Federal Campaign Comm'n v. Federal
Election Comm.*, 518 U.S. 604, 616, 116 S.Ct. 2309, 2316 (1996) ("The independent expression
of a political party's views is 'core' First Amendment activity no less than is the independent
expression of individuals, candidates, or other political committees"); *Norman v. Reed*, 502 U.S.
279, 288, 112 S.Ct. 698, 704-705 (1992) ("constitutional right of citizens to create and develop
new political parties . . . advances the constitutional interest of like-minded voters to gather in
pursuit of common political ends"); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214,
107 S.Ct. 544, 548-549 (1986) ("The freedom of association protected by the First and
Fourteenth Amendments includes partisan political organization."). As a result, political parties'
government, structure, and activities enjoy constitutional protection. *See Eu v. San Francisco
County Democratic Central Comm.*, 489 U.S. 214, 230, 109 S.Ct. 1013, 1024 (1989) (noting
political party's "discretion in how to organize itself, conduct its affairs, and select its leaders");
*Tashjian*, 479 U.S. at 224, 107 S.Ct., at 553-554 (Constitution protects a party's "determination .
. . of the structure which best allows it to pursue its political goals").

Restrictions upon the access of political parties to the ballot impinge upon the rights of
individuals to associate for political purposes, as well as the rights of qualified voters to cast their
votes effectively. *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10 (1968). These
associational rights, however, are not absolute and are necessarily subject to qualification if
elections are to be run fairly and effectively. *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274,
1279 (1974).

The Supreme Court has recognized that states may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder. *See Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992)(" '[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process' ") (quoting *Storer*, 415 U.S. at 730, 94 S.Ct. at 1279); *Tashjian*, 479 U.S. at 217, 107 S.Ct. at 549-550 (noting that the Constitution grants States "broad power to prescribe the 'Time, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices").

Election laws will invariably impose some burden upon individual voters. Each provision of an election code, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1570 (1983). Accordingly, the mere fact that a State's system "creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972); *see also Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569 ("not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates").

A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments

that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570; *see also Tashjian*, 479 U.S. at 213-214, 107 S.Ct. at 547-548. Under this standard, the rigor of a court's inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as the Supreme Court has recognized, when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman*, 502 U.S. at 289, 112 S.Ct. at 705. But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1570; *see also id.*, at 788-789, n. 9, 103 S.Ct. at 1569-1570, n. 9.

### A.     Plaintiffs' Assertions Regarding the Burdens New Mexico's Petitioning Process Places on New Parties

Under the framework established by the Supreme Court for considering a challenge to a state election law, the first step in assessing Plaintiffs' challenge to New Mexico's requirements for new party candidates seeking to be listed on the ballot is to consider the "character and magnitude" of the burdens the requirements place on new parties and their candidates. Plaintiffs assert that New Mexico's system for new party candidates burdens their rights because it requires that an organization submit a petition containing a certain number of signatures before it may qualify as a "political party" as well as requires the now-recognized political party to submit a

10

petition containing a certain number of signatures for each candidate the party seeks to have listed on the general election ballot. Plaintiffs argue that these requirements create impermissible burdens on new minor party candidates because they must (1) go through two petitioning processes in a single election cycle and (2) obtain signatures from voters outside their party.

### 1. Petitioning Burdens

Plaintiffs first contend that New Mexico's ballot access system creates heavy burdens on new political parties because they are forced to expend significant time and resources in going through two petitioning processes. First, to be recognized as a new party, a political organization must obtain a requisite number of signatures on a petition. Second, once recognized as a party, the organization must obtain a requisite number of signatures for each candidate it seeks to place on the ballot. If a party seeks to be recognized shortly before a general election and wants to run a candidate in that election, both petitioning requirements could occur in the same election cycle. Plaintiffs note, therefore, that the particular burden of completing both the party petition and candidate petitions in a particular election cycle would only fall on new parties, thereby creating a greater burden on them as compared to major parties.

Plaintiffs allude to the general burdens of a petition process and note that the burden is particularly heavy for the candidate petitions because they must complete a petition for every candidate they wish to place on the ballot. In addition, Plaintiffs assert that the time and resources expended in the candidate petitioning process is increased if multiple minor parties seek to run candidates for a particular office. New Mexico regulations allow a voter to sign only one candidate petition for each office that will appear on the ballot. As a result, Plaintiffs reason, for every additional candidate seeking ballot access through petition, the fewer the number of

11

available petition signers.  And, with a smaller pool of eligible petition signers, more time and resources must be expended to obtain the requisite number of signatures.  Plaintiffs further assert that the burdens of the candidate petitions are exacerbated by the fact that the party may have just completed a new party petition process.

### 2. Choosing Nominees

Plaintiffs argue that New Mexico's new party ballot access scheme burdens small parties' fundamental right to choose their own nominees because it gives "non-members a veto power over the plaintiffs' nominees." According to Plaintiffs, some small parties, like the Libertarian Party, do not have enough members to meet the signature requirements for the candidate petitions from within their own party and therefore must seek signatures from outside of their party.  Plaintiffs assert that forcing a party to obtain support for its candidates from outside the party burdens the party's associational rights by (1) allowing non-party members to prevent the party from nominating its preferred candidate by refusing to sign the petition; (2) forcing the party, in anticipation of a lack of support for its candidates, to choose candidates who hold more popular views; and (3) cause the nature of the party itself to change as a result of the non-members' heavy influence over the nominee selection process.

Plaintiffs construe this burden as being a result of the two-petition process, but in fact the new party petition is not relevant to the question of whether a party must seek voter signatures from outside its party to qualify candidates.

### B.   Interests Asserted by New Mexico to Justify the Burden Imposed by Its Petition Requirement

In response to Plaintiffs' assertions regarding the burdens created by New Mexico's

petitioning requirements for new party candidates, the State asserts that the requirements are necessary to establish that a proposed candidate has a modicum of popular support before being included on the ballot.[5]  As the New Mexico Legislature found, in the absence of such a required showing of support, the State saw an increasing number of third-party and independent candidates and other ballot initiatives, which created problems with ballot construction and voting machine use.  *See* 41st Legislature, First Session 1993, House Memorial #56 (requesting that the secretary of state review the current Election Code in light of the increased number of candidates and questions being placed on the ballot and make recommendations to the legislature regarding proposed changes to the Election Code that may assist the secretary of state in preparing the election ballot).  The Legislature's finding followed the 1992 General Election where six of the eight third-party or independent candidates for President of the United States on the ballot in New Mexico received 0.1% or less of the votes cast for the office.

The Supreme Court has recognized that a requirement that a candidate demonstrate some support before being placed on the ballot safeguards the integrity of elections by avoiding overloaded ballots and frivolous candidacies, which in turn diminish victory margins, contribute to the cost of conducting elections, confuse and frustrate voters, increase the need for burdensome runoffs, and may ultimately discourage voter participation in the electoral process. *See Illinois State Board of Elections v. Socialist Worker Party*, 440 U.S. 173, 183-84, 99 S.Ct. 983, 989-90 ("A procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and

---

[5]  The State has not articulated its interests in having a petitioning requirement for recognition as a qualified political party because Plaintiffs do not directly challenge this requirement.

motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to impede the electoral process.")(quoting *Lubin v. Panish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319 (1974)); *Bullock*, 405 U.S. at 145, 92 S.Ct. at 857 (States' need to assure that the winner of an election "is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections."); *Jenness*, 403 U.S. at 442, 91 S.Ct. at 1976 ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot-the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."). Based on these considerations, the Supreme Court has repeatedly held that States have a legitimate interest in protecting the integrity of the electoral process by ensuring that all candidates for nomination make a preliminary showing of substantial support among eligible voters. *See, e.g., Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S.Ct. 533, 536 (1986) ( "modicum of support among the potential voters for the office"); *Anderson*, 460 U.S. at 788-89 n. 9, 103 S.Ct. at 1569-70 n. 9 ("preliminary showing of substantial support"); *American Party of Texas*, 415 U.S. at 782, 94 S.Ct. at 1307 ("significant, measurable quantum of community support"); *Lubin*, 415 U.S. at 715, 94 S.Ct. at 1319 ("serious candidates with some prospects of public support"); *Jenness*, 403 U.S. at 442, 91 S.Ct. at 1976 ("significant modicum of support").

C.     **Weighing the Burden on New Parties Seeking to List Candidates on the Ballot Against State's Interest in Petition Requirements**

The Court's weighing of the burdens and interests implicated by New Mexico's system for new party candidate ballot access is guided by the Supreme Court's consideration of similar

14

ballot access systems in other states. At the outset, it is worth noting that while Plaintiffs characterize their challenge as one to the burdens imposed on new party candidates by the combination of the new party petitioning requirement and the candidate nominating petition requirement, the majority of Plaintiffs' complaints are directed solely at the State's candidate nominating petition requirements.

### 1. Candidate Nominating Petition Requirements

In *Jenness*, the Court considered Georgia election statutes that required independent candidates and minor-party candidates, in order to be listed on the general election ballot, to submit petitions signed by at least 5% of the voters eligible to vote in the last election for the office in question. *Jenness*, 403 U.S. 431, 91 S.Ct. 1970. In *American Party of Texas*, the Court considered the Texas requirement that candidates of minor political parties demonstrate support from a number of persons equaling at least 1% of the total vote cast for Governor at the last preceding general election. *American Party of Texas*, 415 U.S. 767, 94 S.Ct. 1296. The Supreme Court upheld the election statutes in both cases and in doing so clearly established that States have an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot . . ." *Anderson*, 460 U.S. at 788, n. 9, 103 S.Ct. at 1569, n. 9; *see also Dillon v. Evans*, 549 F.2d 183, 184 (10th Cir. 1977) ("The constitutionality of statutes requiring nominating petitions, or their functional equivalent, which contain a number of signatures equal to a percentage of total voters is beyond question.").

The petitioning requirements in *Jenness* and *American Party* were upheld based on the same State interests raised here, but the requirements were measurably more burdensome. The Georgia statute upheld in *Jenness* required minor party and independent candidates to submit

15

petitions signed by a number of persons equal to *5% of the voters eligible to vote* in the preceding election for the office the candidate seeks. *Jenness*, 403 U.S. at 433, 91 S.Ct. at 1971-1972. In comparison, a New Mexico minor party candidate need only submit a petition signed by *1% of the votes cast* in the preceding election for the office the candidate seeks.

Similarly, New Mexico's requirement that a voter sign only one candidate petition for each office that will appear on the ballot is less restrictive than other petitioning requirements that have been upheld by the Supreme Court. The Texas statute upheld in *American Party of Texas* required voters signing supplemental petitions to swear under oath that they had not participated in another party's nominating or qualification proceedings. *American Party of Texas*, 415 U.S. at 778, 94 S.Ct. at 1304-1305. Thus, a voter who participated in a party's primary could not sign the nominating petition for a minor party's candidate, presumably reducing the number of persons eligible to sign a nominating petition by a substantial margin. The Supreme Court upheld such a requirement as "nothing more than a prohibition against any elector's casting more than one vote in the process of nominating candidates for a particular office. Electors may vote in only one party primary; and it is not apparent to us why the new or smaller party seeking voter support should be entitled to get signatures of those who have already voted in another nominating primary and have already demonstrated their preference for other candidates for the same office the petitioning party seeks to fill." *Id.* at 785. In New Mexico, a minor party candidate can obtain a petition signature from any eligible voter, even one who has participated in his or her party's primary, as long as that voter has not signed a nominating

petition for another candidate for the same office.[6]

Plaintiffs assert that in addition to the burdens of obtaining a sufficient number of signatures for a candidate nominating petition, they are also burdened by the fact that their party's size compels them to seek signatures from individuals outside their party. Although apparently never directly addressed, this argument has been implicitly rejected by the Supreme Court. The Supreme Court has unmistakably held that a State may require a candidate to show some level of support before being placed on the ballot. This support is not merely support within the candidate's own party but "a significant, measurable quantum of *community* support." *American Party*, 415 U.S. at 782, 94 S.Ct. at 1307 (emphasis added). Consequently, if the party has fewer members than required to place its candidate on the ballot then that candidate must obtain signatures from non-party members in order to demonstrate the community support necessary to justify placement of the candidate's name on the ballot.

Plaintiffs overstate the control non-members have over a minor party's selection process. A minor party nominates its candidate through its own internal rules and regulations. Non-party member participation is necessary only to the extent the party has insufficient members to show that its chosen candidate has sufficient support from the entire electorate to justify placing the

_____

[6] Notably, the evidence before the Court demonstrates that minor parties have been able to satisfy the petitioning requirements in New Mexico and get their candidates on the election ballot. *See, e.g., Storer*, 415 U.S. at 742, 94 S.Ct. at 1285 (a minor party is not impermissibly burdened by ballot access restrictions when "a reasonably diligent independent candidate" could be expected to satisfy the ballot access requirement). At least one minor party--the Green Party-- has qualified candidates for the New Mexico 2006 General Election. This suggests to the Court that the ballot access restrictions make it neither "impossible nor impractical" for minor parties to get their candidates on the general election ballot. *See American Party of Texas*, 415 U.S. at 783, 94 S.Ct. at 1307 (upholding 1% petition signature requirement, in part, because it was apparent that it was, in practice, not "impossible or impractical" for minor parties to demonstrate this level of support).

17

candidate on the ballot. This is in sharp contrast to the nominee selection process invalidated by the Supreme Court in *California Democratic Party v. Jones*, 530 U.S. 567, 120 S.Ct. 2402 (2000), the case upon which Plaintiffs rely. In *California Democratic Party*, the Supreme Court invalidated a "blanket" primary scheme that permitted a voter to vote for any candidate regardless of the voter's or candidate's party affiliation, in part, because allowing non-party members to determine a party's nominee could potentially result in selection of a nominee different from the one party members would select, or, even if the person favored by a majority of the party members prevailed, he or she may have prevailed by taking somewhat different positions. *California Democratic Party*, 530 U.S. at 579-580, 120 S.Ct. at 2411.

Permitting minor parties to gather support for their candidate, who was chosen solely by party members, from non-party members is distinctly different than permitting non-party members to select a party's nominee. Permitting minor parties to gather support outside their party does not implicate the identity of interests between parties and their candidates and does not direct changes to the political party's philosophy by forcing upon it unwanted candidates. Consequently, the fact that smaller political parties, such as the Libertarian Party, will have to go outside the party to show a modicum of community support does not significantly alter the balance between the burdens faced by the party on the one hand and the State's interests on the other hand.

The Supreme Court's holdings in *Jenness* and *American Party of Texas* compel the conclusion that the one-percent candidate petition requirement does not, at least standing alone, violate Plaintiffs' constitutional rights. The State's legitimate interests in the candidate petitioning requirements easily outweigh the burdens asserted by Plaintiffs.

### 2.  The Effect of the New Party Petitioning Process

Plaintiffs urge that the burden of the candidate petitioning process on new parties cannot be examined in isolation from the new party petitioning process and that when the burdens of both processes are considered, it alters the balance between the State's interests and the burdens on a new party candidate.

Importantly, Plaintiffs do not directly challenge the new party petitioning requirement, as perhaps they cannot since the Libertarian Party has met the requirements of becoming a party and is currently recognized as a minor party.  Furthermore, the Tenth Circuit has upheld more stringent party recognition requirements.  *See Rainbow Coalition of Oklahoma v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir. 1988) (finding constitutional Oklahoma's election scheme that authorizes candidates of recognized parties to be automatically identified on the ballot by party label, but requires unrecognized parties to file petitions bearing the signatures of at least 5% of the total votes cast in the last general election to achieve similar identification). Instead, Plaintiffs suggest that the new party petitioning requirement increases the burden on a new party candidate or diminishes the state's interest in requiring a showing of support from a new party candidate, or both.

Undoubtedly, it is more burdensome for a political organization to obtain the necessary signatures for becoming recognized as a minor party and, assuming it seeks to run candidates shortly thereafter, to obtain the necessary signatures for each of the candidates it seeks to place on the ballot.  Even when considered in combination, however, the burdens are still substantially less than the burdens imposed by schemes previously upheld by the Supreme Court.  At most, a party, to be both recognized as a political party and to run a candidate, would have to gather

signatures equaling 1.5% of the voters in the preceding election, which is substantially less than the 5% of eligible voters required under the Georgia system upheld in *Jenness*. And, the burdens of obtaining those signatures does not appear to be significantly more than those faced by candidates under the Texas system upheld in *American Party of Texas*.

Further, there is no basis to weigh the burdens of the new party petition and the candidate petition solely against the State's interests regarding which candidates to list on the ballot. The State presumably has separate interests in maintaining a petition requirement for recognition of a political party and that is the burden against which the new party petition should be measured. Because Plaintiffs do not challenge the new party petition requirement standing alone, neither party discusses the interests that the State may have in that requirement. The Court notes, however, that the Supreme Court has recognized that the State has an interest in recognizing and regulating political parties. *See, e.g., Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 1369 (1997) (it is beyond question "that States may, and inevitably must, enact reasonable regulations of parties . . . to reduce election- and campaign-related disorder"); *Ray v. Blair*, 343 U.S. 214, 226, n. 14, 72 S.Ct. 654, 660, n. 14 (1952) ("In facilitating the effective operation of a democratic government, a state might reasonably classify voters or candidates according to political affiliations . . .."); *Clingman v. Beaver*, 544 U.S. 581, 594, 125 S.Ct. 2029, 2039 (2005) (State's interest in the integrity of its election system includes "preserv[ing] the political parties as viable and identifiable interest groups").

In addition, Plaintiffs appear to suggest that it is the timing of the two petitions that is particularly burdensome, but there is no requirement that a party (if it anticipates being unable to complete the new party and candidate petitions) run candidates the year that it is recognized as a

20

party and there is nothing that prohibits a political party from seeking to be qualified as a political party well before the election in which they wish to run candidates. Furthermore, there is no prohibition against a person signing both a new party petition and a candidate nominating petition. As a result, the fact that a new party recently completed a new party petition does not decrease the number of persons eligible to sign candidate petitions.

The fact that a party, through its new party petition, has demonstrated a certain amount of support for its recognition as a political party does not alter the State's interest in ensuring support for each candidate on the ballot. The mere fact that a party has established sufficient support to be qualified as a political party does not ensure that the candidates it seeks to list on the ballot also have support.[7] Just as the State ensures that established parties have support for their candidates so does the State ensure that a new party's candidates have sufficient support to justify including their names on the ballot.

In support of their position that the combination of the new party and candidate petitions is unconstitutional, Plaintiffs cite to *Maryland Green Party v. Maryland Board of Elections*, 277 Md. 127, 832 A.2d 214 (Ct. App. 2001). In *Maryland Green Party*, the Maryland Green Party

---

[7]  The political party petition is designed to demonstrate a minimum amount of support for party recognition *statewide*. The candidate petition is designed to ensure that a specific minor political party candidate has a "significant modicum of support" from the *relevant voting district* before his or her name is placed on the general election ballot. The State has a legitimate interest in ensuring a modicum of candidate support among the relevant voter constituencies, over and above any general support that might be imputed to the party based on a "statewide" petition for recognition as a political party. The Supreme Court recently confirmed that a State possesses a separate, and additional, interest in ascertaining that a political party that nominates candidates for office in an electoral subdivision of a larger political unit demonstrate support in the particular electoral subdivision for which the candidate is nominated. *See Norman*, 502 U.S. at 295, 112 S.Ct. at 708 (rejecting "overall" showing of support as basis for nominating local candidate; "[a] Party [may not] cite its success in [one] district as a sufficient condition for running candidates in the [other]").

challenged Maryland's election requirements that, to be recognized as a minor party, a group had to submit a petition with signatures of at least 10,000 registered voters and then nominate its candidates through a second petition signed by at least 1% of all registered voters in that congressional district.

The Maryland Green Party asserted that once a political party had submitted the required 10,000 signatures to receive official recognition as a political party, it had demonstrated a "significant modicum of support" and no further showing of support should be necessary for its candidate to appear on the ballot. The argument was persuasive under the Maryland system because major party candidates were permitted to demonstrate the required showing of a "significant modicum of support" for their candidates based solely on the votes cast for the party's candidates in the last election. On the other hand, minor parties could not demonstrate the required showing of a "significant modicum of support" for their candidates based on the support for the party shown by the new party petition. Accordingly, the Maryland Court of Appeals held that the second petitioning requirement for minor parties discriminated against minor political parties in violation of the equal protection component of the Maryland constitution because major party candidates did not have any petitioning requirements and independent candidates did not have the first petitioning requirement.

Even if the Court were to accept the reasoning in *Maryland Green Party*, the case is of limited relevance to the issues in this case due to the significant factual differences in the challenged statutes. The *Maryland Green Party* court did not find a two-petition system *per se* unlawful; rather, the court found that because similar burdens were not placed on major parties and independent candidates, such a system violated state equal protection provisions. In contrast

22

to Maryland, New Mexico has petitioning requirements for major party candidates.[8]  In addition, the court in *Maryland Green Party* found it significant that the initial party-forming petition required 10,000 signatures while the candidate petition required only 3,411 signatures, stating that "[i]t is difficult to comprehend how the second petitioning requirement adds very much more, in the way of showing public support, to the first petitioning requirement."  *Maryland Green Party*, 377 Md. at 164, 832 A.2d at 236.   New Mexico, on the other hand, has a lower signature requirement for recognition as a party and a higher signature requirement to demonstrate support for a candidate.  Thus, the candidate petitioning requirement does add more in the way of showing public support.

It is also important to note that in New Mexico, minor parties, including newly recognized minor parties, are permitted more time than major parties to obtain the necessary signatures for their candidate petitions.  Permitting minor parties more time to fulfill petitioning requirements eases any burden the petitioning requirements impose and undermines any argument that the petitioning requirement, in conjunction with the party recognition petition requirement, imposes an unfair burden on newly recognized minor parties as compared to major parties.

The State has separate interests in ensuring support for a political party and ensuring a modicum of support for a particular candidate nominated by that party.  The fact that these two petitions may, under certain circumstances, occur in the same election cycle does not create a sufficient burden to outweigh the important State interests served by the requirements.  In fact,

---

[8]  Plaintiffs have not challenged minor party ballot access *vis à vis* independent candidates and, accordingly, such a claim is not considered by the Court.

the combined burdens imposed by these two petition requirements--gathering signatures equaling 1.5% of the voters in the preceding election--is substantially less than the burdens upheld by the Supreme Court in prior ballot access cases.  The legitimate interests asserted by the State are sufficient to outweigh the limited burdens that New Mexico's requirements that a petition be submitted to be recognized as a political party and that a petition be submitted to show support for a minor political party's candidates impose on the Libertarian Party's associational rights.

### CONCLUSION

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 534-535 (1964).  But the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system. *See Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569-1570; *Storer*, 415 U.S. at 730, 94 S.Ct. at 1279.  New Mexico's political party and candidate nominating petition requirements, considered as part of an electoral scheme that provides constitutionally sufficient ballot access, do not impose an unconstitutional burden upon the First and Fourteenth Amendment rights of Plaintiffs.

**IT IS THEREFORE ORDERED** that Defendant Secretary of State's Motion for Summary Judgment, filed August 17, 2006, **[Doc. No. 15]** is **GRANTED.**  Judgment will be entered in favor of Defendant Secretary of State on all claims in Plaintiffs' Complaint.

**IT IS FURTHER ORDERED** that because Defendant Mary Herrera's interests are identical to Defendant Secretary of State's interests, summary judgment will be granted *sua sponte* in favor of Defendant Mary Herrera for the same reasons discussed above.

Dated this 18th day of September, 2006.

24

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
   George Bach
   Jesse A. Boyd
   Bryan Sells

Attorneys for Defendants:
   David K. Thomson
   Zachary Shandler